UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GARLAND D. WELCH,

        Petitioner,

                                    CASE NO. 2:07-CV-10567

v.                                JUDGE BERNARD A. FRIEDMAN
                                  MAGISTRATE JUDGE PAUL J. KOMIVES

JOHN PRELESNIK,

        Respondent.

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION ................................................................. 2
    A.    *Procedural History* .......................................................... 2
    B.    *Factual Background Underlying Petitioner's Conviction* .............................. 5
    C.    *Procedural Matters* ......................................................... 7
        1.    *Rule 2(c)* ............................................................ 7
        2.    *Procedural Default* .................................................... 8
    D.    *Standard of Review* ....................................................... 10
    E.    *Sufficiency of the Evidence (Claim I)* ......................................... 13
        1.    *Clearly Established Law* ................................................ 13
        2.    *Analysis* ............................................................ 16
    F.    *Jury Instruction (Claim II)* ................................................. 17
        1.    *Clearly Established Law* ................................................ 17
        2.    *Analysis* ............................................................ 19
    G.    *Claims Related to the Search (Claims III & V)* .................................... 22
        1.    *Failure to Suppress (Claim V)* .......................................... 22
        2.    *Failure to Hold a Franks Hearing (Claim III)* ............................... 25
    H.    *Claims Related to the Confidential Informant (Claims IV, VI & VII)* ................... 28
        1.    *Failure to Produce Confidential Informant (Claims IV & VII)* ................... 28
        2.    *Confrontation (Claim VI)* ............................................... 31
    I.    *Ineffective Assistance of Counsel (Claims VIII & IX)* .............................. 32
        1.    *Clearly Established Law* ................................................ 33
        2.    *Trial Counsel (Claim VIII)* ............................................. 34
        3.    *Appellate Counsel (Claim IX)* ........................................... 34
    J.    *Sentencing (Claim X)* ..................................................... 35
    K.    *Conclusion* ............................................................. 36
III.    NOTICE TO PARTIES REGARDING OBJECTIONS ..................................... 36

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.     REPORT:

A.      *Procedural History*

1.      Petitioner Garland D. Welch is a state prisoner, currently confined at the Thumb Correctional Facility in Lapeer, Michigan.

2.      On January 22, 2002, petitioner was convicted of possession with intent to deliver 225-650 grams of cocaine, MICH. COMP. LAWS § 333.7401(2)(a)(2); possession of marijuana, MICH. COMP. LAWS § 333.7403(2)(d); felon in possession of a firearm, MICH. COMP. LAWS § 750.224f; receiving and concealing a stolen firearm, MICH. COMP. LAWS § 750.535b; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Saginaw County Circuit Court.  On March 28, 2002, he was sentenced as an habitual offender to terms of 20-30 years' imprisonment on the cocaine conviction, 12-18 months' imprisonment on the marijuana conviction, 24-90 months' imprisonment on the felon in possession conviction, 1-15 years' imprisonment on the receiving a stolen firearm conviction, and a mandatory two years' imprisonment on the felony-firearm conviction.  The sentence on the cocaine conviction was ordered to run consecutive to the marijuana, felon in possession, and receiving a stolen firearm sentences, and the felony-firearm sentence was ordered to run consecutive to all of the other sentences.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims[1]:

---

[1]The first two claims were raised in petitioner's initial brief, and the latter three were raised in a supplemental brief filed by counsel.

2

I.      DEFENDANT'S CONVICTION FOR RECEIVING AND/OR
        CONCEALING A STOLEN FIREARM WAS CONSTITUTIONALLY
        DEFICIENT AND MUST BE VACATED BECAUSE THERE WAS
        LEGALLY INSUFFICIENT EVIDENCE THAT DEFENDANT KNEW
        THE FIREARM FOUND IN THE HOME WAS STOLEN.

II.     DEFENDANT'S CONVICTION FOR POSSESSION OF A FIREARM
        DURING THE COMMISSION OF A FELONY MUST BE VACATED OR,
        MINIMALLY, THE CASE MUST BE REMANDED FOR
        RESENTENCING, WHEN THE COURT FAILED TO INSTRUCT THE
        JURY AS TO A PARTICULAR SPECIFIC UNDERLYING FELONY TO
        SUPPORT THE FELONY-FIREARM CONVICTION AND THEN MADE
        THE TWO-YEAR FELONY-FIREARM SENTENCE CONSECUTIVE TO
        ALL THE OTHER SENTENCES, INCLUDING ONE FOR A
        MISDEMEANOR.

III.    THE TRIAL COURT ERRED IN DENYING DEFENDANT'S REQUEST
        FOR A HEARING PURSUANT TO *FRANKS V. DELAWARE*.

IV.     THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION
        TO PRODUCE THE CONFIDENTIAL INFORMANT FOR IN CAMERA
        QUESTIONING.

V.      THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION
        TO SUPPRESS AND DISMISS WHERE THE EVIDENCE SEIZED AT
        1205 HILAND ON SEPTEMBER 6, 2000 WAS THE FRUIT OF AN
        ILLEGAL SEARCH AND SEIZURE.

The court of appeals remanded to the trial court with an instruction to make the marijuana and felon-

in-possession sentences concurrent with the felony-firearm sentence.  In all other respects, the court

found no merit to petitioner's claims and affirmed his convictions and sentences.  *See People v.

Welch*, No. 241083, 2003 WL 22796851 (Mich. Ct. App. Nov. 25, 2003) (per curiam).

        4.      Petitioner sought leave to appeal these issues to the Michigan Supreme Court.  The

Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People

v. Welch*, 471 Mich. 950, 690 N.W.2d 117 (2004).

        5.      On February 21, 2006, petitioner filed a motion for relief from judgment in the trial

court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

    I.      THE PROCEDURES EMPLOYED AT TRIAL DENIED WELCH HIS CONSTITUTIONAL RIGHT UNDER THE CONFRONTATION CLAUSE TO A FACE-TO-FACE MEETING WITH HIS ACCUSER/ CONFIDENTIAL INFORMANT APPEARING BEFORE A TRIER OF FACT; THE CLAIM IS NOT BARRED.

    II.     THIS COURT DENIED MR. WELCH HIS RIGHT TO A FAIR TRIAL UNDER THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION BY DENYING HIS REQUEST FOR PRODUCTION OF THE CONFIDENTIAL INFORMANT AND A HEARING IN-CHAMBERS WITHOUT MAKING A DETERMINATION REGARDING WHETHER THE CONFIDENTIAL INFORMANT WOULD BE RELEVANT AND HELPFUL TO THE DEFENSE; LAW OF THE CASE DOES NOT BAR THIS CLAIM.

    III.   TRIAL COUNSEL'S DEFICIENT PERFORMANCE ACTUALLY PREJUDICED MR. WELCH'S RIGHT TO A FAIR TRIAL UNDER BOTH THE STATE AND FEDERAL CONSTITUTIONS.

    IV.   THE COURT SHOULD HEAR THE CASE ON THE MERITS WHERE MR. WELCH HAD INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL; IT WOULD RESULT IN A MISCARRIAGE OF JUSTICE NOT TO HEAR THE MERITS; THERE IS A STRONG POSSIBILITY THAT HE IS ACTUALLY INNOCENT.

    V.    MR. WELCH SHOULD BE RE-SENTENCED UNDER THE DUE PROCESS CLAUSE WHERE THIS COURT REFUSED TO RECOGNIZE THAT IT COULD DEPART FROM THE MANDATORY MINIMUM OF TWENTY TO THIRTY YEARS.

On the same day that it was filed the trial court denied petitioner's motion for relief from judgment, concluding that petitioner had failed to show good cause for his failure to raise these claims on direct appeal, and thus they were barred by MICH. CT. R. 6.508(D)(3). *See People v. Welch*, No. 00-019291-FH-5 (Saginaw County, Mich., Cir. Ct. Feb. 21, 2006. The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR

4

6.508(D)." *People v. Welch*, 477 Mich. 982, 725 N.W.2d 351 (2007); *People v. Welch*, No. 268987 (Mich. Ct. App. Sept. 28, 2006).

      6.      Petitioner, through counsel, filed the instant application for a writ of habeas corpus on February 7, 2007.  As grounds for the writ of habeas corpus, petitioner appears to raise the five claims that he raised on direct appeal and the five claims that he raised in his motion for relief from judgment.[2]

      7.      Respondent filed his answer on August 14, 2007.  He contends that petitioner's direct appeal claims are without merit or not cognizable on habeas review, and that petitioner's claims raised in his motion for relief from judgment are barred by petitioner's procedural default in the state courts.  Respondent also argues that petitioner's application fails to comply with Rule 2(c), 28 U.S.C. foll. § 2254.

B.     *Factual Background Underlying Petitioner's Conviction*

      The evidence adduced at trial was accurately summarized in petitioner's initial brief on direct appeal in the Michigan Court of Appeals:

> The charges against Mr. Welch arose from the September 7, 2000, execution of a search warrant at 1205 Hiland Street in the city of Saginaw.  BAYANET (Bay Area Narcotics Enforcement Team) officers entered the then-unoccupied dwelling with force in order to locate evidence of narcotic trafficking.  Once inside, officers located and removed approximately three hundred and fifty grams of cocaine and roughly sixty grams of marijuana.  Also located on the premises were two firearms.
> The prosecution first called Tanya Denise Welch, the ex-wife of Garland Welch.  Ms. Welch testified that she had previously owned People's Exhibit 16, a 9-millimeter Sturm-Ruger semi-automatic handgun found at the Hiland Street residence, and that it was stolen from her residence at 4042 Harold Street in the city of Saginaw in 1998, sometime after her separation from Mr. Welch (T II 7).
> Michigan State Police Officer John Trafalet testified that he had been

---

    [2]For simplicity, I refer to the claims raised on direct appeal as Claims I-V and the claims raised in the motion for relief from judgment as Claims VI-X.

assigned to the Bay Area Narcotics Enforcement Team (BAYANET), a multi-jurisdictional police unit, which included Saginaw (T II 11).   Officer Trafalet participated in the execution of a search warrant at 1205 Hiland Street on September 7, 2000.  The raid took place near midnight and officers had to use a "ram" to enter the premises because no one answered the door during their "knock and announce" (T II 15).   Officer Trafalet was the seizing officer, meaning that it was his responsibility to photograph, record, seize, and log any evidence located at the scene (T II 13).

Officer Trafalet found and noted a number of items in the residence.  Inside the oven broiler, police found two separate bags of powder cocaine (T II 23).  Located in a drawer next to the oven, police found a bag of powder cocaine, a shoebox top with marijuana, a cutter and razor blades, electronic scales, and packaging material (T II 30).  In the bedroom, officers seized a snubnose .38 revolver (T II 45), a small plastic bag containing a quantity of marijuana (T II 39), four-thousand, five-hundred and fifty-six dollars in U.S. currency (T II 74), and a 9-millimeter handgun (T II 46).  Several documents reflecting Mr. Welch's name and address were also seized.  These included a Charter Communication bill dated July 10, 2000, addressed to Garland Welch at 1205 Hiland, Saginaw, Michigan (T II 53), and a Ford Motor credit application made out to Garland Welch at 1606 Federal, Saginaw, Michigan (T II 56).  Officer Trafalet said that electronic scales and small Ziploc baggies were commonly used by those in the drug trade (T II 35).  Officer Trafalet also noted that the different color Ziploc bags were used so that buyers could identify whose product they were purchasing (T II 37).

Officer Tommy Tucker of the Michigan State Police participated in surveillance of the Hiland Street home before the search warrant was executed.  Officer Tucker stated that a red Camaro parked in the driveway was registered to Mr. Welch (T II 19).  During execution of the warrant, two females, one older and one in her early 20s, came to the residence in a vehicle, but they were not arrested in this matter (T II 129-130).

William Doran, a detective with the Saginaw Gang Task Force, which works closely with BAYANET, stated that during his search of the residence he located both the money and handgun in the bedroom dresser drawer.  Marijuana was on top of the dresser (T II 145-146).

The prosecution moved to have Officer Terry Williams qualified as an expert witness in the area of narcotics investigation.  Defense counsel stipulated to his status as an expert and the court noted the qualification (T III 16).  Officer Williams testified as to the current street value of the cocaine (T III 23), that electronic scales in close proximity to cocaine were most likely used to weigh the product (T III 25), that razor blades and cutters were probably used to cut up the product (T III 27), and that small Ziploc bags were used to distribute cocaine (T III 28).

Forensic chemist Paul Bahr of the Michigan State Police Bridgeport Crime Laboratory was qualified as an expert in the testing of illicit narcotics, and he testified that the three bags of white powder all contained cocaine (T III 80), and the green leafy substance found in two bags was in fact marijuana (T III 81).

6

Andrew Longurski, a sergeant with the Michigan Stat e Police, testified as an expert in the field of latent print identification that only one of the items seized on the night of September 7, 2000, held an identifiable print.  People's Exhibit 7A (a plastic Ziploc bag) contained Mr. Welch's print (T III 114).

When the prosecution rested its case, defense counsel moved for a directed verdict of acquittal as to all counts on the ground that the evidence was insufficient to create a jury issue (T III 130).  Counsel specifically called the court's attention to count five, receiving and concealing a stolen firearm.  He noted that there was no evidence that Mr. Welch knew the firearm had been reported stolen (T III 130).  The court denied the defense counsel's motion, at which time the defense indicated that it did not intend to put any witnesses on the stand (T III 130).

The jury deliberated and returned a verdict of guilty on all counts (T IV 98).

Def.-Appellant's Br. on Appeal, in *People v. Welch*, No. 241083 (Mich. Ct. App.), at 1-4.

C.   *Procedural Matters*

Before addressing the substance of petitioner's claims, it is necessary to address two procedural matter raised by respondent.  First, respondent contends that petitioner's habeas application fails to comply with Rule 2(c).  Second, he contends that petitioner's five claims raised in the state court motion for relief from judgment are barred by petitioner's procedural default in the state courts.

1.   *Rule 2(c)*

Rule 2(c) of the Rules Governing Section 2254 Proceedings in the United States District Courts provides that a habeas petition "must:  (1) specify all the grounds for relief available to the petitioner; (2) state the facts supporting each ground; (3) state the relief requested; (4) be printed, typewritten, or legibly handwritten; and (5) be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242." Rule 2(c), 28 U.S.C. foll. § 2254.  As the Supreme Court explained, Rule 2(c) sets a higher pleading standard than the ordinary notice pleading standard applicable to civil actions under FED. R. CIV. P. 8(a), so as to enable a district court to determine whether to order a response to the petition or summarily dismiss,

and to enable the respondent answer the allegations of the petition if a response is ordered.  *See*

*Mayle v. Felix*, 545 U.S. 644, 655-656 (2005).

Here, the application prepared by counsel does not explicitly specify the grounds for relief or the facts supporting the relief as required by Rule 2(c).  Rather, the petition provides that petitioner relies and incorporates "the briefs, arguments, authorities and all questions submitted to the Michigan courts within this petition as if fully set forth herein[.]" Pet., ¶ 11.  Appended to the petition are petitioner's state court briefs.  As a general matter, merely attaching or incorporating by reference a petitioner's state court briefs in insufficient to satisfy the pleading requirements of Rule 2(c).  *See White v. Neven*, No. 2:05-cv-00608, 2009 WL 874250, at *6 n.16 (D. Nev. Mar. 26, 2009); *Smith v. Jackson*, No. 04-CV-40256, 2006 WL 950269, at *2 (E.D. Mich. Apr. 12, 2006) (Gadola, J.); *Moore v. Swenson*, 361 F. Supp. 1346, 1351 (E.D. Mo. 1973).  Thus, petitioner's application fails to comply with Rule 2(c).

Nevertheless, the Court should address the merits of the claims raised by petitioner.  When a habeas petitioner fails to comply with Rule 2(c), the appropriate course for the district court is to accept the petition for filing and direct the petitioner to "submit a corrected petition that conforms to Rule 2(c)."  Rule 2(c), 28 U.S.C. foll. § 2254, Advisory Committee note, 2004 amendments. Here, it is clear what claims petitioner seeks to raise, and respondent does not appear to have been prejudiced in his ability to respond to petitioner's claims.  Thus, requiring the submission of a corrected petition would merely require the expenditure of additional resources to little effect. Accordingly, the Court should adjudicate the claims incorporated into the petition notwithstanding the petition's lack of conformity with Rule 2(c).

  2.    *Procedural Default*

8

Respondent also contends that petitioner's sixth through tenth claims are barred by petitioner's procedural default in the state courts, because petitioner failed to raise these claims on direct appeal. Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Here, petitioner first presented his purportedly defaulted habeas claims in his motion for relief from judgment. Michigan Court Rule 6.508, governing motions for relief from judgment, provides that the movant "bears the burden of establishing entitlement to relief." MICH. CT. R. 6.508(D). The rule goes on to provide, in three separately numbered paragraphs, procedural situations in which relief will not be granted: (1) where an appeal relating to the conviction is pending; (2) where the claim has already been ruled upon in a prior appeal or postconviction motion; and (3) where the claim could have been raised in a prior appeal or postconviction motion but was

not. *See* MICH. CT. R. 6.508(D)(1)-(3). Because the trial court explicitly relied on Rule 6.508(D)(3) in rejecting petitioner's claims, the Michigan Court of Appeals and the Michigan Supreme Court orders rejecting petitioner's appeal based on his "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)" is sufficient to constitute a clear and express reliance on the procedural bar set forth in Rule 6.508(D)(3). *See Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000).

Nevertheless, it is necessary to consider the claims on the merits. Petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts. Petitioner contends that his appellate counsel was ineffective for failing to raise these claims on direct appeal. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

10

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court

to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]

Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694.

However, "[i]n order for a federal court to find a state court's application of [Supreme Court]

11

precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.      *Sufficiency of the Evidence (Claim I)*

Petitioner first contends that the prosecution presented insufficient evidence to show that he knowingly received and concealed a stolen weapon, and that his conviction on this charge is therefore unconstitutional.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution.  *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992).  In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

However, under the amended version § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision.  Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

13

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

The statute under which petitioner was convicted provides that "[a] person who receives, conceals, stores, barters, sells, disposes of, pledges, or accepts as security for a loan a stolen firearm or stolen ammunition, knowing that the firearm or ammunition was stolen, is guilty of a felony, punishable by imprisonment for not more than 10 years or by a fine of not more than $ 5,000.00, or both." MICH. COMP. LAWS § 750.535b(2). To obtain a conviction under this statute, the prosecution must "prove that defendant (1) received, concealed, stored, bartered, sold, disposed of, pledged, or accepted as security for a loan (2) a stolen firearm or stolen ammunition (3) knowing that the firearm or ammunition was stolen." *People v. Nutt*, 469 Mich. 565, 593, 677 N.W.2d 1, 16 (2004). The Michigan courts have provided no guidance on the knowledge element of this statute. However, in *Echelone Homes, LLC v. Carter Lumber Co.*, 472 Mich. 192, 694 N.W.2d 544 (2005), the Supreme Court interpreted the "knowing" requirement of the civil property conversion statute, which similarly provides for a treble damage remedy against a person who buys, receives, or aids in the concealment of converted property "when the person buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property *knew* that the property was stolen." MICH. COMP. LAWS § 600.2919a. Based on the plain language of the statute, the supreme court concluded that

14

only actual knowledge suffices to establish a violation of the statute; constructive knowledge is

insufficient.  The court explained:

> A plain reading of this statute indicates that a person must know that the property was stolen, embezzled, or converted in order to be held liable. That the person "should have known" is not sufficient to impose liability under the statute.
>
> The term "know" does not encompass constructive knowledge, that one "should have known."  BLACK'S LAW DICTIONARY (8th ed) defines "knowledge" as "[a]n awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact." "Constructive knowledge," on the other hand, is defined as "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Id*.
>
> Constructive knowledge is a distinct concept from knowledge, and cannot replace the requirement of knowledge in a statute. The Legislature uses the terms "knew" and "should have known" to indicate a difference between knowledge and constructive knowledge. We found thirty-eight statutes that refer to constructive knowledge, using a variation of the phrase "knew or should have known." *See* MCL 205.14(2)(d) (a tobacco seller or distributor can be held liable for illegally selling tobacco products if it "knew or should have known that the manufacturer intended the tobacco product to be sold or distributed" outside the prescribed area); MCL 691.1417(3)(c) (to receive compensation for property damage or physical injury from a governmental agency the claimant must show that "[t]he governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect"); MCL 565.831(4) (a person who provides a statement used in an application for registration or property report is liable only for false statements and omissions in his statement and only "if it is proved he knew or reasonably should have known of the existence of the true facts by reason of which the liability is alleged to exist"); MCL 445.1902(b)(ii)(B) (misappropriation of a trade secret includes one who disclosed or used a trade secret of another when, at the time of disclosure or use, the person "knew or had reason to know that his or her knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it").

*Echelon Homes*, 472 Mich. at 197-98, 694 N.W.2d at 547-48.  There is no reason to believe that the

Michigan Supreme Court would construe that language of the criminal statute prohibiting receipt

or concealment of a stolen gun any differently.

Despite the *Echelon Homes* requirement of actual knowledge, however, the prosecutor need

not present direct evidence of such knowledge, and may prove knowledge through circumstantial

15

evidence.  Although the *Echelon Homes* court held that actual knowledge is required under the general conversion statute, the court further explained that actual knowledge may be shown by circumstantial evidence of the type also used to establish constructive knowledge.  In other words, the court recognized a distinction between a showing of constructive knowledge and a showing of actual knowledge based on circumstantial evidence.  *See Echelon Homes*, 472 Mich. at 199-200, 694 N.W.2d at 548-49.

> 2.  *Analysis*

Petitioner contends that there was no evidence presented to show that he knew the gun found in his home was stolen.  The Michigan Court of Appeals rejected this argument, noting the testimony of petitioner's ex-wife that the gun was the gun that had been stolen from her home during a break-in after she and petitioner had separated.  The court reasoned that "it would be unbelievably coincidental that defendant would have happened to have bought a gun that, unbeknownst to him, had been stolen from his estranged wife.  Therefore, it would be reasonable to infer that either defendant himself stole the gun from his wife's house, or that it was stolen by someone working in concert with defendant."  *Welch*, 2003 WL 22796851, at *1, slip op. at 2.  Further, the court reasoned, even if petitioner just happened to purchase a gun that had been stolen from his wife with no knowledge that this was so, "it is not unreasonable to conclude that defendant knew that the weapon had been stolen from someone," in light of the fact that petitioner was a convicted felon who legally could not purchase a firearm.  *Id*.  The court explained that "it is reasonable to infer from the illegal nature of such a transaction that defendant had to have known that [the gun] must have been stolen in order for it to have entered the illegal weapons trade."  *Id*.  The Court should conclude that this determination was reasonable.

As noted above, under the *Echelon Homes* court's definition of "knowledge," a defendant's knowledge can be proved by circumstantial evidence. Here, the mere fact that the gun found in petitioner's home was the same one that was stolen from his estranged wife's home provided strong circumstantial evidence that petitioner either stole the gun himself or acted in concert with the person who did so. From this circumstantial evidence the jury could have concluded beyond a reasonable doubt that petitioner knew that the gun was stolen. This is so even though it is possible that petitioner coincidentally purchased the gun not knowing that it had been stolen from his ex-wife. The fact that the evidence may have supported another version of events is irrelevant; the prosecution's evidence need not rule out every hypothesis other than petitioner's guilt to be sufficient. *See Jackson*, 443 U.S. at 326. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Jury Instruction (Claim II)*

Petitioner next contends that he was denied a fair trial by the court's failure to instruct the jury, with respect to the felony-firearm charge, that it had to find that petitioner possessed the firearm in relation to one specific felony. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws).

17

Thus, in order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle*, 502 U.S. at 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

Despite this deferential standard of review, a jury instruction will not withstand scrutiny if it submits alternative theories for the jury to convict, one of which is permissible and the other unconstitutional, and the reviewing court cannot determine on which theory the jury relied. *See Zant v. Stephens*, 462 U.S. 862, 881-83 (1983); *Bachellar v. Maryland*, 397 U.S. 564, 571 (1970); *United States v. Wilkinson*, 26 F.3d 623, 625 (6th Cir. 1994). *But see Griffin v. United States*, 502 U.S. 46, 56 (1991) (general jury verdict is valid if sufficient evidence supports one of the grounds for conviction, so long as the other submitted grounds are neither illegal nor unconstitutional, but merely unsupported by the evidence); *United States v. Mari*, 47 F.3d 782, 785-86 (6th Cir. 1995). An instruction is also invalid if it can be viewed by the jury as shifting the burden of proving an element of the case onto the defendant, as when it instructs the jury to presume that a person intends to commit the natural, ordinary and usual consequences of his voluntary actions, *see Sandstrom v. Montana*, 442 U.S. 510, 524 (1979), or to presume malice from either an unlawful act or from the

18

use of a deadly weapon, *see Yates v. Evatt*, 500 U.S. 391, 401-02 (1991); *Houston v. Dutton*, 50 F.3d 381, 385-86 (6th Cir.1995). If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). Nonetheless, instructional errors of state law will rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

2.      *Analysis*

Petitioner argues that the trial court erred in failing to instruct the jury that it must find that he possessed the firearm with respect to one specific felony. The court instructed the jury with respect to the felony-firearm charge:

> The defendant is also charged with the separate crime of possessing a firearm at the time he committed the crime of illegally possessing with intent to deliver more than 225 grams but less than 650 grams of a mixture containing a controlled substance, cocaine, or the lesser crime of illegally possessing with intent to deliver more than 50 grams but less than 225 grams of a mixture containing cocaine, or the lesser crime of knowingly or intentionally possessing more than 225 grams but less than 650 grams of a mixture containing cocaine, or the lesser crime of knowingly or intentionally possessing more than 50 grams but less than 225 grams of a mixture containing a controlled substance, cocaine; or the crime of possession of a firearm by a felon, or the crime of knowingly receiving and/or concealing and/or storing stolen property, namely, a 9-millimeter handgun. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
> First, that the defendant committed the crime of illegally possessing with intent to deliver more than 225 grams but less than 650 grams of a mixture containing a controlled substance, cocaine, or any of the other crimes that I've just mentioned. It is not necessary, however, that the defendant be convicted of those crimes.
> Second, that at the time the defendant committed that crime, he knowingly carried or possessed a firearm.

Trial Tr., Vol. IV. Petitioner contends that this instruction failed to adequately inform the jury that it must tie the possession to a specific underlying felony. The Court should conclude that

19

petitioner is not entitled to relief on this claim.

Petitioner's claim is based on the Michigan Supreme Court's decision in *People v. Clark*, 463 Mich. 459, 619 N.W.2d 538 (2000). In that case, the Supreme Court held that a consecutive sentence on a felony-firearm conviction can only be imposed with respect to the sentence for the specific underlying felony which served as the predicate for the felony-firearm conviction. *See id*. at 463-64, 619 N.W.2d at 541. However, *Clark* stands only for the proposition that a sentence imposed on a felony-firearm conviction may be imposed consecutive only to the crime which served as the predicate for the felony-firearm conviction. Nothing in *Clark* prohibits a prosecutor from charging or a jury from finding multiple felonies as predicates for a single felony-firearm charge. On the contrary, the *Clark* court explicitly recognized that "[a]t the discretion of the prosecuting attorney, the complaint and the information could have listed additional crimes as underlying offenses in the felony-firearm count," *id*. at 464 n.11, 619 N.W.2d at 541 n.11, which is precisely what occurred in petitioner's case. As the court of appeals observed in petitioner's case, this footnote "endorse[s] the practice of linking multiple predicate felonies to a single felony-firearm charge, allowing the sentence on that single felony-firearm count to be consecutive to all of the listed predicate felonies for that felony-firearm count." *Welch*, 2003 WL 22796851, at *3, slip op. at 3; *see also*, *People v. Smith*, No. 249833, 2005 WL 354581, at *3 (Mich. Ct. App. Feb. 15, 2005). Thus, the trial court's instruction comported with Michigan law, and petitioner cannot show that the instruction deprived him of a fair trial.

Although petitioner does not explicitly make this argument, I note that petitioner has no claim that the instruction deprived him of a unanimous verdict with respect to the felony-firearm charge, for two reasons. First, there is no constitutional right to a unanimous verdict in a state

criminal trial.  The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district in wherein the crime shall have been committed[.]" U.S. CONST. amend. VI.  Although this provision has been interpreted as requiring jury unanimity in federal prosecutions, this requirement has not been applied to the states through the Due Process Clause of the Fourteenth Amendment. Thus, as a general matter, there is no constitutional requirement that a state criminal jury reach a unanimous verdict, *see Schad v. Arizona*, 501 U.S. 624, 630 (1991) (plurality opinion); *Brown v. Louisiana*, 447 U.S. 323, 330-31 (1980); *Apodaca v. Oregon*, 406 U.S. 404, 410-11 (1972) (plurality opinion),[3] and a jury unanimity claim, standing alone, will therefore afford no basis for habeas relief, *see Carlyle v. Rowland*, No. 91-55385, 1992 WL 122254, at *1 (9th Cir. June 3, 1992).

Second, in *Richardson v. United States*, 526 U.S. 813 (1999), "the Supreme Court distinguished between the elements of a crime, which it held had to be determined unanimously, and the means by which an element may be accomplished, which does not require unanimity."  *United States v. Davis*, 306 F.3d 398, 413 (6th Cir. 2002) (discussing *Richardson*, 526 U.S. at 817); *see also*, *Schad v. Arizona*, 501 U.S. 624, 632-45 (1991) (plurality opinion).  Here, the felony-firearm charge could be satisfied by the possession of a gun with respect to any felony, and thus the court's instruction did not deprive petitioner of his right to a unanimous verdict.  *Cf. Coe v. Bell*, 161 F.3d 320, 348 (6th Cir. 1998) (citing *Schad* for the proposition that "it is acceptable for a first-degree murder conviction to be based on two alternative theories even if there is no basis to conclude which one (if only one) the jury used."); *United States v. DeJohn*, 368 F.3d 533, 542 (6th Cir.

---

[3]In certain situations a state criminal defendant may have a constitutional due process right to a unanimous verdict, such as where he is tried before a six-person jury.  *See Brown*, 447 U.S. at 331. However, these circumstances are not present here.

2004) (under federal firearm possession statute, jury need not be instructed that it must unanimously find possession of a particular firearm). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Claims Related to the Search (Claims III & V)*

Petitioner next raises several challenges to the search and seizure which led to his conviction. First, petitioner contends that the trial court erred in failing to suppress the fruits of the search because the search was not based on probable cause. Second, petitioner contends that the trial court erred in denying him a *Franks* hearing. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Failure to Suppress (Claim V)*

Petitioner contends that the totality of the evidence in this case demonstrates that overzealous officers fabricated allegations to give them probable cause, and thus that the search of his home violated the Fourth Amendment. Prior to trial, petitioner filed a motion to suppress, which sought suppression of the evidence, production of the confidential informant, and an evidentiary hearing. At a pretrial motion to adjourn the trial, the parties agreed that the trial date should be adjourned and that the prosecutor, who disputed the need for an evidentiary hearing, be given an opportunity to file a response to the motion. The court did so, instructing defense counsel that if he desired an evidentiary hearing after reviewing the prosecutor's response, he should so inform the court and the court would set the hearing. *See* Mot. to Adjourn Trial Tr., dated 5/15/01, at 5. In response to petitioner's motion, the prosecutor argued that a hearing was not needed because the motion could be resolved on the basis of the preliminary examination transcript and the parties' submissions, and defense counsel never requested an evidentiary hearing after reviewing the prosecutor's response.

22

*See Welch*, 2003 WL 22796851, at *3, slip op. at 4.  The Court should conclude that petitioner is not entitled to habeas relief on this claim, because it is not cognizable on habeas review.

Because "the exclusion of illegally seized evidence is simply a prophylactic device intended to deter Fourth Amendment violations by law enforcement officers," *Kaufman v. United States*, 394 U.S. 217, 224 (1969), the Supreme Court has determined that

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Stone v. Powell*, 428 U.S. 465, 482 (1976); *see also, Cardwell v. Taylor*, 461 U.S. 571, 571-72 (1983) (per curiam).  Thus, petitioner's claim is not cognizable on habeas review if he had an adequate opportunity to present his claim to the state courts.  "For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which to raise the claim and the presentation of the claim in this case must not have been frustrated by a failure of that mechanism." *Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985); *see also, Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *Willett v. Lockhart*, 37 F.3d 1271-72 (8th Cir. 1994).  The requirement that there be, in the abstract, a mechanism by which to raise the Fourth Amendment claim "is met when state procedures provide a meaningful vehicle for a prisoner to raise a fourth amendment claim." *United States v. Scarborough*, 777 F.2d 175, 182 (4th Cir. 1985).

There is no question that Michigan provides such mechanism, in the abstract, to raise and litigate Fourth Amendment claims. *See Markham v. Smith*, 10 Fed. Appx. 323, 327 (6th Cir. 2001); *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000).  Nor has petitioner offered anything to show that there was a failure of that mechanism.  It is true that the trial court did not conduct an evidentiary hearing, but petitioner has offered nothing to show that the issues presented by his

23

suppression motion were not adequately addressed in the preliminary examination testimony and the parties' submissions. Because these factual issues were fully explored at the preliminary examination, "[t]he mere fact that the trial court ruled on petitioner's motion to suppress evidence without conducting a new evidentiary hearing does not constitute a denial of a full and fair opportunity to litigate his Fourth Amendment claims in the state courts." *Williams v. Davis*, No. 2:07-CV-11050, 2007 WL 184088, at *4 (E.D. Mich. June 26, 2007) (Duggan, J.); *accord Smith v. Sherry*, No. 04-CV-73038, 2005 WL 2649244, at *4 (E.D. Mich. Oct. 14, 2005) (Rosen, J.); *see also*, *Sanders v. Oliver*, 611 F.2d 804, 808 (10th Cir. 1979). And, in any event, as the court of appeals noted, the trial court gave petitioner the opportunity to request an evidentiary hearing, but petitioner failed to do so.

Under *Stone* the correctness of the state courts' conclusions is simply irrelevant. The courts that have considered the matter "have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar." *Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir. 1986); *see also*, *Willett*, 37 F.3d at 1270 (citing cases). An argument directed solely at the correctness of the state court decision "goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant." *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994). As succinctly put by the Seventh Circuit, "'full and fair' guarantees the right to present one's case, but it does not guarantee a correct result." *Cabrera v. Hinsley*, 324 F.3d 527, 532 (7th Cir. 2003). Here, petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in the state courts, and his habeas claim challenges the correctness of the state courts' adjudications of that claim. Thus, petitioner's claim is barred by *Stone*.

24

2.    *Failure to Hold a <u>Franks</u> Hearing (Claim III)*

Petitioner also contends that the trial court erred in failing to hold a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). In *Franks*, the Court held that where a defendant shows by a preponderance of the evidence that "a false statement knowingly or intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the . . . false statement is necessary to the finding of probable cause, . . . the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 155-56. Thus, to establish a claim under *Franks* a defendant must establish three elements: "(1) a factual statement made in an affidavit supporting a warrant is false; (2) the affiant made the false statement 'knowingly and intentionally or with reckless disregard for the truth'; and (3) without the false statements, the remainder of the affidavit is insufficient to establish probable cause." *Delta Eng'g v. United States*, 41 F.3d 259, 262 (6th Cir. 1994). Importantly, to satisfy the second element it is not sufficient that the affiant make a negligent misstatement; to establish a *Franks* violation petitioner must show that the omission was either deliberate or reckless. *See Atkin*, 107 F.3d at 1217; *United States v. Reivich*, 793 F.3d 957, 960 (8th Cir. 1986). *See generally*, *Franks*, 438 U.S. at 171. Where the first two elements are shown, the third element of the *Franks* test requires the reviewing court to view the affidavit as if the false statements were not included. If the affidavit, so read, nevertheless establishes probable cause for a search, the petitioner's *Franks* claim fails. *See United States v. Keszthelyi*, 308 F.3d 557, 566-67 (6th Cir. 2002); *United States v. Graham*, 275 F.3d 490, 506-07 (6th Cir. 2001). *See generally*, *Franks*, 438 U.S. at 171-72.

Here, however, as explained above, petitioner did not properly request an evidentiary

hearing. Although petitioner initially requested an evidentiary hearing in connection with the motion, the prosecutor responded that such a hearing might not be necessary. The trial court ordered the prosecutor to respond and informed defense counsel that if he still wanted to have an evidentiary hearing after the prosecutor responded to the motion, he should so inform the court and a hearing would be scheduled. Counsel failed to do so, apparently agreeing with the prosecutor that a further evidentiary hearing was not necessary. Further, petitioner cannot show that the preliminary examination was not adequate under *Franks*. Petitioner's counsel fully explored the alleged discrepancies between the affidavit and Williams's testimony at the preliminary examination. Petitioner does not suggest any other evidence (apart from production of the confidential informant, an issue discussed below) which could have been explored in a further hearing.

Finally, petitioner cannot show that a *Franks* hearing was necessary because he has failed to show that there was an absence of probable cause if the inaccurate material was deleted from the affidavit. Petitioner contends that, in the search warrant affidavit, Officer Williams averred that he had been in contact with an unnamed confidential informant within the past 48 hours who advised Williams's that: cocaine and marijuana were being stored at 1205 Hiland; he personally observed over 10 pounds of marijuana at the address; and he personally saw defendant sell in excess of one ounce of powder cocaine to a person who was present at 1205 Hiland. *See* Pet'r's Direct App. Br., at 23.[4] Petitioner also contends that Williams also averred that he ran a LEIN check on a 1986 Camaro and found that it was registered to petitioner at the Hiland address. Petitioner contends that Officer Williams's testimony at the preliminary examination indicates that his affidavit was

---

[4]Petitioner has not attached a copy of the search warrant affidavit to his petition, nor is a copy attached to any of the briefs petitioner filed in the state courts. As explained below, even under petitioner's own characterization of the affidavit he is not entitled to relief, so I assume that his characterization is accurate.

inaccurate to the extent it reflected the informant's observations regarding marijuana and the registration of his Camaro at the Hiland address. Even without these averments, however, the affidavit establishes the confidential informant's claim to have seen cocaine at the house and to have seen petitioner make a sale of cocaine at the house. These averments, standing alone, would have been sufficient to establish probable cause.

Petitioner also contends that Officer Williams's affidavit was false with respect to the credibility of the confidential informant. In the affidavit, according to petitioner, Williams averred that the informant was credible "because he/she has previously engaged in a course of performance that had aided law enforcement investigations. The CI's previous assistance has results in arrest(s) and seizure of controlled substances," and because he had "corroborated the details of the CI's statements and observations by reliable police investigations." Petitioner contends that this second assertion was false, because Williams testified at the preliminary examination that he was not necessarily referring to investigations in this particular case, but was referring to past investigations. At the outset, it does not appear on its face that the affidavit was false. The affidavit, in the same paragraph discussing the informant's past assistance, merely states that the CI's statements had been corroborated by reliable police investigations. This statement, particularly its use of the plural "investigations," is just as easily read as referring to the corroboration of the informant in past cases as in petitioner's particular case. In any event, even taking away this second statement, the fact that the informant had provided reliable information in the past resulting in drug arrests and seizures was sufficient by itself to establish the informant's reliability. "The fact that an informant is a person of proven reliability may be sufficient in itself to establish the veracity of the informant's hearsay statements." *United States v. Smith*, 182 F.3d 473, 479 (6th Cir. 1999) (citing *McCray v. Illinois*,

386 U.S. 300, 302-04 (1967)); *see also*, *United States v. Robbins*, 240 Fed. Appx. 684, 689 (6th Cir. 2007); *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001).

In short, the preliminary examination adequately covered the areas which would have been explored in a *Franks* hearing, petitioner failed to request a *Franks* hearing after the prosecutor responded to his motion although he was given the opportunity to do so, and even accepting petitioner's version the unchallenged statements in the affidavit were sufficient to establish the informant's reliability and probable cause for the search. For these reasons, the Court should conclude that petitioner is not entitled to habeas relief on his *Franks* claim.

H.   *Claims Related to the Confidential Informant (Claims IV, VI & VII)*

Petitioner next raises several claims relating to the failure to the trial court to order the prosecution to produce the confidential informant for, at a minimum, an *in camera* examination. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.   *Failure to Produce Confidential Informant (Claims IV & VII)*

Petitioner contends that the trial court erred in failing to require production of the informant based on the credible allegations that the warrant affidavit contained false information regarding the lack of corroboration of the informant's information. Petitioner also contends that the false statements in the affidavit establish that there never was a confidential informant in the case. The Michigan Court of Appeals rejected this claim, concluding that petitioner's mere allegation that the informant did not exist was not sufficient to demonstrate a need for the informant, and that the allegedly false information in the affidavit did not establish the nonexistence of the informant, but at most that the police did not corroborate the informant's testimony to the extent claimed in the affidavit. *See Welch*, 2003 WL 22796851, at *4 & n.3, slip op. at 4-5 & n.3. The Court should

28

conclude that petitioner is not entitled to habeas relief on this claim.

In *Roviaro v. United States*, 353 U.S. 53 (1957), the Court held, after discussing the history of the confidential informer privilege, that "[w]here the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id*. at 60. A court faced with the issue must "balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id*. at 62. Petitioner's request for an *in camera* interview, as opposed to disclosure to petitioner, is likewise governed by *Roviaro*'s balancing test. *See United States v. Arechiga-Ramirez*, 197 Fed. Appx. 555, 555 (9th Cir. 2006). As an initial matter, it is not clear whether *Roviaro* applies here. A petitioner "can obtain federal habeas corpus relief only if his custody is in violation of the Federal Constitution." *Mabry v. Johnson*, 467 U.S. 504, 507 (1984). The Supreme Court decided *Roviaro* not as a matter of federal constitutional law, but rather as a matter of its supervisory powers over criminal trials in federal courts. *See McCray v. Illinois*, 386 U.S. 300, 309 (1967) (describing *Roviaro* as an exercise of the Court's supervisory jurisdiction, which the Court described as a "task which is quite different, of course, from the responsibility of constitutional adjudication."). Because of this, some courts have expressed doubt as to whether *Roviaro* is applicable in state criminal trials such that a violation of the *Roviaro* framework is cognizable on habeas review. *See Phillips v. Cardwell*, 482 F.2d 1348, 1349 (6th Cir. 1973). Nevertheless, the Supreme Court subsequently harmonized *Roviaro* and *McCray*, concluding that *Roviaro*'s "subsequent affirmation in *McCray*, . . . where both due process and confrontation claims were considered by the Court, suggest that *Roviaro* would not have been decided differently if those claims had actually been called to the Court's attention." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 870 (1982). Thus a number

of courts have held that *Roviaro* does establish a rule of federal constitutional law. *See United States v. Bailey*, 834 F.2d 218, 225 (1st Cir. 1987); *Gaines v. Hess*, 662 F.2d 1364, 1368 (10th Cir. 1981).

Assuming that a *Roviaro* claim is generally cognizable on habeas review, the Court should nevertheless conclude that petitioner is not entitled to habeas relief on this claim. To the extent that petitioner is claiming that the informant's identity should have been disclosed at the preliminary examination or in connection with his suppression motion, his claim is foreclosed by the Supreme Court's decision in *McCray*. In that decision, the Court observed:

> What *Roviaro* thus makes clear is that this court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even in formulating evidentiary rules for federal criminal trials. Much less has the Court ever approached the formulation of a federal evidentiary rule of compulsory disclosure where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake.

*McCray*, 386 U.S. at 311; "Thus, as the law comes down to us now, disclosure of an informant's identity is not required at a preliminary hearing to determine probable cause[.]" *Hawkins v. Robinson*, 367 F. Supp. 1025, 1034 (D. Conn. 1973); *accord Hoffman v. Reali*, 973 F.2d 980, 987 (1st Cir. 1992); *State v. Mertens*, 268 N.W.2d 446, 452 (N.D. 1978); *see also*, *United States v. Cummins*, 912 F.2d 98, 103 (6th Cir. 1990) (no right to disclosure of informer's identity at pretrial suppression hearing); *State v. Williams*, 646 N.E.2d 836, 837 (Ohio Ct. App. 1994) (same).

Further, petitioner failed to show a need for disclosure of the confidential informant. "The burden is on the individual seeking disclosure of a confidential informant . . . to show the need for disclosure." *Emmons v. McLaughlin*, 874 F.2d 351, 357 (6th Cir. 1989). As the court of appeals rightly observed, the mere fact that the affidavit contained some false assertions, if that was a fact, does not compel or even suggest the conclusion that the informant did not actually exist. And, as noted above, the uncontradicted averment that the information had provided reliable information in

30

the past was sufficient to establish the informant's reliability for the purposes of the probable cause determination.  "Without some reason to question the informants' existence or credibility, [petitioner] had no right to disclosure of their identity."  *Id*. at 358.

Further, petitioner has failed to show that the confidential informant would have been useful to his defense at trial.  In Claim VII, petitioner contends that the informant was the only witness who could have answered a myriad of questions relating to how the informant came to be in petitioner's house and what he observed there.  However, although relevant to the suppression issues, this information was irrelevant at trial.  None of the informant's observations formed the bases of the charges against petitioner, and no evidence relating to the informant's observations was admitted at trial.  Rather, the charges against petitioner were based on the fact of the presence of the drugs and weapons at petitioner's house as uncovered in the police search.  Although probable cause for the search hinged on the informant's statements to the police, the prosecutor's case at trial hinged on the results of the search, independent of the reasons for the search.  Thus, the informant's testimony would not have provided any useful information for petitioner's defense at trial.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### 2.    *Confrontation (Claim VI)*

Petitioner also contends that the failure to produce the confidential informant deprived petitioner of his right to confront the witnesses against him.  The Court should reject this claim.

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . .  to be confronted with the witnesses against him[.]" U.S. CONST. amend. VI.  Here, the Confrontation Clause is not implicated because the informant did not testify

31

at trial. By its terms the Confrontation Clause applies only to the witnesses, and "a defendant has

no right to confront an informant who provides no evidence at trial." *United States v. Francesco*,

725 F.2d 817, 822 (1st Cir. 1984); *accord Cooper v. California*, 386 U.S. 58, 62 n.2 (1967)

("Petitioner also presents the contention here that he was unconstitutionally deprived of the right to

confront the witnesses against him, because the State did not produce the informant to testify against

him. This contention we consider absolutely devoid of merit."); *United States v. Porter*, 764 F.2d

1, 9 (1st Cir. 1985); *United States v. Morgan*, 757 F.2d 1074, 1076 (10th Cir. 1985) *McAllister v.*

*Brown*, 555 F.2d 1277, 1278 (5th Cir. 1977) (per curiam); *State v. Byrd*, 448 N.W.2d 29, 31 (Iowa

1989); *State v. Barton*, 439 P.2d 719, 723 (N.M. 1968); *Gaertner v. State*, 150 N.W.2d 370, 374

(Wis. 1967).

It is true that the introduction of testimonial hearsay by a witness not testifying at trial may

amount to a denial of the right to confront the witnesses against a defendant. *See Crawford v.*

*Washington*, 541 U.S. 36, 68-69 (2004). However, petitioner has identified no hearsay statements

made by the confidential informant that were introduced at trial. The mere fact that Officer

Williams had worked with confidential informants in the course of his duties did not in any way

place before the jury "testimony" by the informant in petitioner's case within the meaning of the

Sixth Amendment. Because the informant did not testify at petitioner's trial, and because none of

the informant's out of court statements were admitted at trial, the informant was not a "witness

against him" under the Sixth Amendment, and petitioner was not denied his Confrontation Clause

rights by the trial court's failure to order disclosure of the confidential informant.

I.    *Ineffective Assistance of Counsel (Claims VIII & IX)*

Petitioner next contends that his trial and appellate attorneys rendered constitutionally

deficient assistance in several respects. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable

33

doubt respecting guilt." *Id*. at 695.

2.    *Trial Counsel (Claim VIII)*

Petitioner contends that trial counsel was ineffective for abandoning his defense calling for disclosure of the confidential informant.  He contends that counsel should have objected to commencing trial without the confidential informant and that counsel should not have abandoned the defense he set in motion in the preliminary stages of the case.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner does not suggest what counsel should have done once the trial court denied his request for disclosure of the confidential informant.  Counsel sought to question the police officers at the preliminary examination regarding the confidential information, but was cut off by the trial court.  Further, counsel sought production of the confidential informant in connection with his motion to suppress, but was denied such relief by the trial court.  Counsel was not obligated to raise anew a matter that had twice been decided against petitioner.  Further, petitioner cannot establish prejudice, because he has failed to point to any evidence or argument that counsel could have asserted which would have overcome the informer's privilege.  As noted above, petitioner has failed to demonstrate a reasonable probability that production of the informant would have caused the trial court to grant his suppression motion, and petitioner has not suggested any useful information the informant could have provided at trial in light of the specific charges against petitioner.  In these circumstances, the Court should conclude that trial counsel was not ineffective, and that petitioner is therefore not entitled to relief on this claim.

3.    *Appellate Counsel (Claim IX)*

Petitioner also contends that his appellate attorney was constitutionally ineffective for failing

to raise on direct appeal the claims that petitioner asserted in his motion for relief from judgment. It is not clear whether petitioner is asserting this claim as an independent basis for relief, or merely as cause to excuse his procedural default. In either event, petitioner's appellate counsel claim is without merit. With respect to appellate counsel, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As noted above, each of petitioner's claims is without merit, and thus counsel was not ineffective for failing to raise them on appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

J.    *Sentencing (Claim X)*

Finally, petitioner contends that he was denied due process at sentencing because the trial court failed to recognize that it had authority to depart from the mandatory minimum sentence on the cocaine conviction. The Court should conclude that this claim is not cognizable.

A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). A petitioner's claim that the court improperly scored, departed from, or failed to depart from the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines

presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review). Petitioner's claim that the state court erred in failing to recognize its authority to depart from the guidelines likewise raises an issue of state law not cognizable on habeas review. *See Gallo-Cervantes v. Lafler*, No. 06-CV-13198, 2009 WL 1298235, at *7 (E.D. Mich. May 8, 2009) (Rosen, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

K.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit*

36

*Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 10/26/09

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on October 26, 2009.

s/Eddrey Butts
Case Manager